**No. 21-20290**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN THE MATTER OF: CALFRAC WELL SERVICES CORPORATION; 12178711 CANADA INCORPORATED; CALFRAC WELL SERVICES LIMITED; CALFRAC (CANADA) INCORPORATED; CALFRAC HOLDINGS L.P.,

*Debtors.*

WILKS BROTHERS, L.L.C. AND ITS AFFILIATED FUNDS,

*Appellant,*

v.

RONALD P. MATHISON, IN HIS CAPACITY AS THE FOREIGN REPRESENTATIVE OF THE CHAPTER 15 DEBTORS; CALFRAC WELL SERVICES CORPORATION; 12178711 CANADA INCORPORATED; CALFRAC WELL SERVICES LIMITED; CALFRAC (CANADA) INCORPORATED; CALFRAC HOLDINGS L.P.,

*Appellees.*

On Appeal from the United States District Court
for the Southern District of Texas
Case No. 4:20-CV-4233 (Hon. Keith P. Ellison)

## APPELLEES' MOTION TO DISMISS APPEAL AS EQUITABLY MOOT

Christopher R. Harris
Adam J. Goldberg
Nacif Taousse
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Melissa Arbus Sherry
Eric J. Konopka
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
melissa.sherry@lw.com

*Counsel for Appellees*

# CERTIFICATE OF INTERESTED PERSONS

## No. 21-20290, *Wilks Brothers, L.L.C. and its affiliated funds v. Ronald P. Mathison, et al. (In the Matter of: Calfrac Well Services Corp., et al.)*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## Appellants

Wilks Brothers, L.L.C. and its affiliated funds. Wilks Brothers, L.L.C. has identified THRC Holdings, LP as an affiliated fund. The general partner of THRC Holdings, LP is THRC Management, LLC.

## Counsel for Appellants

Daniel A. Fliman
PAUL HASTINGS, LLP
200 Park Avenue
New York, NY 10166

Kelli S. Norfleet
Mark R. Trachtenberg
HAYNES & BOONE, LLP
1221 McKinney Street, Suite 4000
Houston, TX 77010

## Former Counsel for Appellants (Appearance Withdrawn)

Patrick N. Petrocelli
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038

## Appellees

Ronald P. Mathison, in his capacity as the foreign representative of the Chapter 15 debtors; Calfrac Well Services Corp.; 12178711 Canada Inc.; Calfrac Well Services

Ltd.; Calfrac (Canada) Inc.; and Calfrac Holdings LP.  Calfrac Well Services Ltd. is publicly traded on the Toronto Stock Exchange under the symbol "CFW."

**<u>Counsel for Appellees</u>**
Melissa Arbus Sherry
Eric J. Konopka
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004

Christopher R. Harris
Adam J. Goldberg
Nacif Taousse
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020

Caroline A. Reckler
Robert C. Collins III
Jeramy D. Webb
Laura R. Zenzerovich
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

John F. Higgins
Eric M. English
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, TX 77002

**<u>Other Interested Persons</u>**
The creditors and shareholders of Calfrac Well Services Corp., 12178711 Canada Inc., Calfrac Well Services Ltd., Calfrac (Canada) Inc., and Calfrac Holdings LP.

 *s/ Melissa Arbus Sherry*
Melissa Arbus Sherry
*Counsel of Record for Appellees*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF CONTENTS........................................................ iii

TABLE OF AUTHORITIES ........................................................iv

INTRODUCTION ........................................................1

BACKGROUND ........................................................3

    A.    This Case ........................................................3

    B.    Consummation Of The Plan Of Arrangement ........................................................7

    C.    Recent Developments........................................................9

ARGUMENT ........................................................10

    A.    Wilks Did Not Obtain—Or Even Seek—A Stay ........................................................12

    B.    The Plan Of Arrangement Has Been Consummated ........................................................14

    C.    Granting Wilks Relief Would Destroy The Benefits Of The Plan Of Arrangement And Affect Countless Parties Not Before The Court........................................................15

    D.    Granting Wilks Relief Would Be Profoundly Inequitable........................................................18

CONCLUSION........................................................20

CERTIFICATE OF CONFERENCE........................................................21

CERTIFICATE OF SERVICE ........................................................21

ECF CERTIFICATION ........................................................21

CERTIFICATE OF COMPLIANCE........................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alberta Energy Partners v. Blast Energy Services, Inc. (In re Blast Energy Services, Inc.)*,
593 F.3d 418 (5th Cir. 2010) ........................................................................12, 18

*Bank of New York Trust Co., NA v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)*,
584 F.3d 229 (5th Cir. 2009) ...............................................................................14

*Halliburton Service v. Crystal Oil Co. (In re Crystal Oil Co.)*,
854 F.2d 79 (5th Cir. 1988) .................................................................................13

*Happy v. Equity Bank SSB (In re Green Aggregates Inc.)*,
345 F. App'x 890 (5th Cir. 2009) .........................................................................15

*Manges v. Seattle-First National Bank (In re Manges)*,
29 F.3d 1034 (5th Cir. 1994) .............................................................1, 11, 13, 18

*In re Ocean Rig UDW Inc.*,
585 B.R. 31 (S.D.N.Y. 2018), *aff'd*, 764 F. App'x 46 (2d Cir. 2019) ...............................................................................................................12

*Spencer Ad Hoc Committee v. Idearc, Inc. (In re Idearc, Inc.)*,
662 F.3d 315 (5th Cir. 2011) ....................................................11, 12, 14, 15, 18

*United States ex rel. FCC v. GWI PCS 1 Inc. (In re GWI PCS 1 Inc.)*,
230 F.3d 788 (5th Cir. 2000) ..............................................................11, 13, 14

*Wells Fargo Bank National Association v. Texas Grand Prairie Hotel Realty, L.L.C. (In re Texas Grand Prairie Hotel Realty, L.L.C.)*,
710 F.3d 324 (5th Cir. 2013) ...............................................................................12

## STATUTES

11 U.S.C. § 1101(2) ..................................................................................................14

# INTRODUCTION

Wilks is a disgruntled bidder for Calfrac's assets.[1]  Wilks seeks to use this ongoing litigation to upset a carefully negotiated, value-maximizing corporate restructuring that was approved by the courts of Canada over its objections—so that it can buy Calfrac's assets at distressed prices.  To that end, Wilks continues to challenge a nearly two-year-old Bankruptcy Court order, affirmed by the District Court, that extended comity to the sound final order of the Canadian courts.  Wilks' challenge fails on the merits for all the reasons explained in Calfrac's concurrently filed answering brief.  But the Court need not examine the merits (or lack thereof) because this appeal is equitably moot.

The doctrine of equitable mootness recognizes that there exists a point in a reorganization beyond which "effective judicial relief is no longer available" because, for example, critical transactions have been consummated and would be difficult or impossible to unwind.  *Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034, 1039 (5th Cir. 1994).  Such is the case here.  Calfrac's restructuring involved a series of interdependent transactions—including the conversion of debt to equity, the infusion of new debt capital, and the issuance of

---

[1]  "Wilks" refers to Appellants Wilks Brothers, L.L.C. and its affiliated funds. Because any distinctions among the various Chapter 15 debtors are immaterial for purposes of this motion, this motion will generally refer to any Chapter 15 debtor and the Chapter 15 debtors collectively as "Calfrac."

warrants—that were all consummated on December 18, 2020, after the Court of Queen's Bench of Alberta (the "Canadian Court")[2] approved Calfrac's restructuring plan, the Court of Appeal of Alberta (the "Canadian Appeals Court") upheld the final order approving the plan, and the Bankruptcy Court extended the final order into the United States.  These transactions were "virtually impossible to unwind" shortly after they occurred.  ROA.57.  They would be even harder to unwind now.

Since December 2020, additional reliance interests have been engendered in the plan and the transactions consummated pursuant to it.  There have been changes to Calfrac's capital structure.  New lenders have come in.  Some of the debt issued under the plan has been converted to equity.  Warrants issued under the plan have been exercised.  And tens of millions of Calfrac's common shares have been traded.  All of Calfrac's stakeholders—even Wilks—have relied on and benefited from the plan, and they would be harmed if the Bankruptcy Court's order were overturned or modified.

It would be particularly inequitable to grant Wilks relief because of Wilks' improper motivations and opportunistic behavior.  As the Canadian Court found, Wilks had "no legitimate commercial reason" to oppose Calfrac's restructuring plan; Wilks opposed the plan only as part of its hostile effort to acquire Calfrac's assets.  ROA.845.  Indeed, as the Canadian Court also found, Wilks purchased second lien

---

[2]   The Canadian Court is now known as the Court of King's Bench of Alberta.

notes issued by Calfrac—the securities on which all of its appeal arguments depend—to "block" Calfrac's restructuring. ROA.845. And now, Wilks has unloaded nearly all the second lien notes it bought, evidently for a handsome profit. Wilks should not be permitted to attack Calfrac's restructuring plan when it has nothing legitimate to gain and Calfrac and its other stakeholders have so much to lose.

The Court should dismiss this appeal as equitably moot.

## BACKGROUND[3]

### A.    This Case

1.    Calfrac is a Canadian company that provides specialized energy services to oil and natural-gas producers in Canada, the United States, and other countries. ROA.244-48. The global energy industry has faced numerous challenges in recent years, which escalated beginning in the first quarter of 2020 due to the COVID-19 pandemic and a price war between major oil-producing nations. ROA.255. As a result, oil and gas companies reduced their budgets, including for the services that Calfrac provides. ROA.255-57.

The rapid and severe degradation in market conditions showed that Calfrac's capital structure and liquidity position were no longer sustainable. ROA.258. In

---

[3]    Calfrac's concurrently filed answering brief (at 4-24) provides more information about the facts and procedural history of this case.

early 2020, Calfrac proactively engaged advisors to assist in developing a recapitalization transaction that would improve its balance sheet and liquidity and reduce its interest expense. ROA.259. This process led to the development of a holistic restructuring transaction. *See infra* at 7-9. It was anticipated that the restructuring would reduce Calfrac's total debt by CAD$561 million, lower its annual cash interest payments by CAD$53 million, and improve its liquidity position by CAD$41 million. ROA.832.

Wilks has consistently stood in the way of this restructuring. Wilks is a direct competitor of Calfrac and has made multiple hostile attempts to acquire Calfrac or its assets since 2017. *See* ROA.3351-55. Wilks' acquisition attempts, and aggressive tactics, continued throughout the proceedings related to Calfrac's proposed recapitalization. In June and July 2020, in the midst of restructuring negotiations, Wilks acquired US$67.3 million of Calfrac's second lien notes—"a potential blocking position in respect of any class vote of the Second Lien Noteholders in connection with Calfrac's recapitalization efforts." ROA.3354-55; ROA.3377-78. In August 2020, Wilks announced an "alternative recapitalization transaction" that would have given it over 60% of the shares of Calfrac's common stock. ROA.1731. In September 2020, Wilks submitted a takeover bid to Calfrac's shareholders. ROA.1732. And Wilks has issued numerous press releases opposing

Calfrac's proposed recapitalization, solicited Calfrac's stakeholders to oppose the recapitalization, and challenged the recapitalization in court. ROA.1729-34.

2.    On July 13, 2020, Calfrac commenced a proceeding in the Canadian Court to seek approval of the proposed recapitalization pursuant to a plan of arrangement under the *Canada Business Corporations Act*. ROA.1500. An arrangement is a "flexible" procedure that allows corporate reorganization, acquisition, and other transactions to be implemented under court supervision, akin to a reorganization under Chapter 11 of the U.S. Bankruptcy Code. ROA.1491.

On October 30, 2020, the Canadian Court approved the plan of arrangement over Wilks' objection, finding it to be fair, balanced, and reasonable. ROA.831, 854. The court recognized, among other things, that the plan received "overwhelming" support from Calfrac's stakeholders; that there was "no reasonable alternative" to the arrangement; that stakeholders would receive more under the arrangement than they would under a liquidation; that Calfrac "would not have a sustainable capital structure going forward" without the arrangement; and that the arrangement was "the most reasonable option for [Calfrac] and its stakeholders, and will ensure a sustainable future for [Calfrac]." ROA.845, 855. The court also noted that Wilks had "no legitimate commercial reason" to oppose the arrangement, and was seeking to block it for "an improper purpose." ROA.845.

Wilks appealed to the Canadian Appeals Court.  ROA.624.  The Canadian Court denied Wilks' application for a stay pending appeal.  ROA.868.[4]  On November 26, 2020, the Canadian Appeals Court upheld the Canadian Court's final order, ROA.2262, and issued its statement of reasons on December 1, ROA.3027-42.  On December 7, 2020, the Canadian Appeals Court denied Wilks' application for a stay pending appeal to the Supreme Court of Canada.  ROA.3870-73.

The plan of arrangement was consummated shortly thereafter, on December 18, 2020.  ROA.54.  The Supreme Court of Canada subsequently denied Wilks' application for leave to appeal.  *See* Opening Br. 23 n.1.

3.     At the same time the Canadian judicial system considered the plan of arrangement, Ronald Mathison, then the executive chairman of Calfrac, commenced this case (as the duly appointed foreign representative of Calfrac) under Chapter 15 of the U.S. Bankruptcy Code.  ROA.239-76.  The purpose of this Chapter 15 case was initially to recognize the Canadian arrangement proceedings, and eventually to enforce the Canadian Court's final order approving the plan.  ROA.239-76; ROA.426-37.

---

[4]     Wilks also applied to the Canadian Appeals Court for a stay of the Canadian Court's final order.  ROA.115-22.  Calfrac "undert[ook] not to implement the Arrangement transactions prior to" a hearing of the Canadian Appeals Court, as long as the court heard Wilks' appeal in November 2020.  ROA.3857.  Because the Canadian Appeals Court agreed to hear the appeal on November 25, 2020 (and ruled a day later), it did not issue a decision "in regards to the stay application and" held "that application . . . in abeyance."  ROA.3859; *see* ROA.2262.

On December 1, 2020, over Wilks' objection, the Bankruptcy Court approved an order enforcing the Canadian Court's final order within the United States. ROA.3680-85; ROA.3787. This Bankruptcy Court order "was a condition precedent to the consummation of the Recapitalization Transaction" effectuated through the plan of arrangement. ROA.54; *see* ROA.1454. Although Wilks appealed the Bankruptcy Court's order to the District Court on December 11, 2020, ROA.11-13, it did not seek a stay of that order.

On appeal, the District Court denied Calfrac's motion to dismiss as equitably moot without providing any reasoning, but affirmed the Bankruptcy Court's order on the merits. *See* ROA.4410-11; ROA.4416, 4454-55. Wilks appealed the District Court's judgment to this Court.

## B.    Consummation Of The Plan Of Arrangement

As noted above, the plan of arrangement was consummated on December 18, 2020—after the Canadian Court entered its final order approving the plan, after the Canadian Appeals Court upheld that final order, after the Bankruptcy Court enforced that final order within the United States, and after stays of relief were either denied or not sought. The plan called for an array of integrated transactions, which were also effectuated on or around December 18, 2020:

- All of Calfrac's senior unsecured notes, in principal amount of approximately CAD\$576 million, were exchanged for approximately 92% of Calfrac's outstanding common shares. ROA.55; ROA.1462.

- Shareholders retained their common shares, subject to a 50-to-1 share consolidation. ROA.55; ROA.1462-63. Common shares began trading on the Toronto Stock Exchange on a post-consolidation basis on December 29, 2020. Ellis Decl. ¶ 7.[5]

- Calfrac completed an offering of CAD\$60 million in principal amount of new 1.5 lien notes, which are convertible into common shares of Calfrac. ROA.56; ROA.1460-61. The proceeds from the issuance of the 1.5 lien notes were used to pay down Calfrac's secured revolving credit facilities. ROA.2915; Ellis Decl. ¶ 3(a).

- The terms of Calfrac's secured revolving credit facilities were amended. Ellis Decl. ¶ 3(a).

- Warrants were issued and distributed to pre-recapitalization shareholders. ROA.56-57; ROA.1463.

---

[5] The "Ellis Declaration" or "Ellis Decl." refers to the Declaration of Jeffrey I. Ellis in Support of Appellees' Motion to Dismiss attached to this motion.

- Calfrac repurchased approximately CAD$910,000 of common shares from shareholders who elected to participate in the repurchase. ROA.57; ROA.1461-62.

As Mr. Mathison attested in January 2021, the transactions described above "are virtually impossible to unwind, particularly given the trading currently taking place with respect to the securities issued pursuant to the Recapitalization Transaction." ROA.57.

## C.     Recent Developments

It has now been almost two years since the transactions called for by the plan of arrangement were completed. During that time, there have been numerous developments related to or connected with the plan and the transactions contemplated thereunder.

There have been additional changes to Calfrac's capital structure and a substantial number of transactions in securities issued by Calfrac. Calfrac has amended the terms of its secured revolving credit facilities multiple times, including to add a new lender and to alter the capacity of the facilities; the latest amendment closed a few days ago, on September 29, 2022. Ellis Decl. ¶ 4. The amount of 1.5 lien notes has been reduced from CAD$60 million to CAD$56 million due to conversions to common shares and other transactions, with another CAD$2.8 million of conversions known to be in progress. *Id.* ¶ 5(a)-(c). Calfrac has paid

approximately CAD$10.2 million of cash interest on the 1.5 lien notes.  *Id.* ¶ 5(d).  Over 3 million warrants issued pursuant to the plan have been traded, and nearly 400,000 warrants have been exercised or canceled.  *Id.* ¶¶ 6, 8.  And shareholders have traded over 30 million common shares of Calfrac.  *Id.* ¶ 7.

In addition, the holders of second lien notes—which are the primary focus of Wilks' arguments on appeal—have changed significantly.  Wilks purchased US$67.3 million of second lien notes, or 56.1% of the total notes outstanding, in June and July 2020.  ROA.3377-78; *see* ROA.251; Ellis Decl. ¶ 11.  Based on the best information available, Wilks now holds less than US$1.8 million of second lien notes, or 1.5% of the total notes outstanding.  Ellis Decl. ¶¶ 15, 17(c).  Three Canadian investment-management/mutual-fund firms now hold 71.1% of the second lien notes, and entities affiliated with a member of Calfrac's board of directors hold another 13.6%.  *Id.* ¶ 17(d)-(e).  Over the time that Wilks held (and evidently sold) its second lien notes, the price increased substantially and is now roughly 30% higher than Wilks' weighted-average purchase price of US$0.7009 per US$1 of face value.  *Id.* ¶¶ 19-20.

## ARGUMENT

Wilks continues to challenge a Bankruptcy Court order from December 2020 that enforced the Canadian Court's final order within the United States.  That challenge is equitably moot.  Granting Wilks the relief it seeks would "unravel" the

plan of arrangement, which has been in effect—and on which Calfrac's stakeholders have relied—for nearly two years. *United States ex rel. FCC v. GWI PCS 1 Inc. (In re GWI PCS 1 Inc.)*, 230 F.3d 788, 803 (5th Cir. 2000). At the same time, overturning or modifying the Bankruptcy Court's order would benefit no one. This is a textbook case where equitable mootness applies.

Equitable mootness recognizes that "concerns unique to bankruptcy"—such as finality, reliance on a judgment, and equity—may outweigh "the right of a party to seek review of a bankruptcy order adversely affecting him." *Spencer Ad Hoc Comm. v. Idearc, Inc. (In re Idearc, Inc.)*, 662 F.3d 315, 318 (5th Cir. 2011) (citation omitted); *Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034, 1039 (5th Cir. 1994) (citation omitted). Courts have found that "a point exists beyond which [they] cannot order fundamental changes in reorganization actions"—*i.e.*, they cannot "[u]nscrambl[e] the [e]ggs." *Idearc*, 662 F.3d at 318; *Manges*, 29 F.3d at 1040 (heading). And equitable mootness "applies equally in the context of foreign reorganizations [recognized under Chapter 15] as it does to domestic ones." *In re Ocean Rig UDW Inc.*, 585 B.R. 31, 40 (S.D.N.Y. 2018), *aff'd*, 764 F. App'x 46 (2d Cir. 2019).

This Court typically evaluates equitable mootness using three factors: (1) "whether a stay has been obtained"; (2) "whether the plan has been 'substantially consummated'"; and (3) "whether the relief requested would affect either the rights

11

of parties not before the court or the success of the plan." *Idearc*, 662 F.3d at 318-19 (citation omitted). Wilks cannot—and did not below—seriously dispute that the first two factors weigh in Calfrac's favor. And when "no stay has been obtained and the plan has been substantially consummated, [it is] more likely the third prong indicates equitable mootness." *Alberta Energy Partners v. Blast Energy Servs., Inc. (In re Blast Energy Servs., Inc.)*, 593 F.3d 418, 424 (5th Cir. 2010). That is true here. Wilks' *goal* is to destroy the benefits of the plan of arrangement and force Calfrac into bankruptcy where Wilks may seek to acquire Calfrac's assets. And if Wilks were to succeed, parties other than Wilks would predominantly feel the effects, since Wilks now holds only a token amount of the second lien notes it is purporting to protect. Wilks' appeal is equitably moot.[6]

### A.    Wilks Did Not Obtain—Or Even Seek—A Stay

The Court first considers "whether a stay has been obtained." *Idearc*, 662 F.3d at 318-19. "[I]n many situations, [a] court's decision whether to grant a stay is essentially dispositive" because, absent a stay, reliance interests may be engendered

---

[6]    The District Court denied Calfrac's motion to dismiss Wilks' appeal as equitably moot without providing any reasoning. *See* ROA.4416. This Court gives no deference to the District Court's decision. *See Wells Fargo Bank Nat'l Ass'n v. Tex. Grand Prairie Hotel Realty, L.L.C. (In re Tex. Grand Prairie Hotel Realty, L.L.C.)*, 710 F.3d 324, 327 (5th Cir. 2013) (the Court "review[s] *de novo* the Debtors' equitable mootness defense"). Deference would be particularly inappropriate here, because nearly 18 months have passed since the District Court's decision, and subsequent developments strengthen the case for equitable mootness further still. *See infra* at 18-20.

in the reorganization plan and it may be more difficult to unwind critical transactions. *Manges*, 29 F.3d at 1040. That is all the more true when an appellant has not even *sought* a stay. As this Court has explained, a finding of equitable mootness is especially appropriate "when an appellant has made no effort to obtain a stay and has permitted 'such a comprehensive change of circumstances to occur as to render it inequitable' for the appellate court to reach the merits of the appeal." *Halliburton Serv. v. Crystal Oil Co. (In re Crystal Oil Co.)*, 854 F.2d 79, 82 (5th Cir. 1988) (citation omitted).

Wilks has made no such effort. Although Wilks unsuccessfully applied for stays from the Canadian Court and the Canadian Appeals Court, it did not even *try* to obtain a stay of the Bankruptcy Court's order from the Bankruptcy Court, the District Court, or this Court. *See* ROA.53-54; ROA.867-68; ROA.3873; *see also* ROA.3816 (Wilks conceding it did not seek a stay of the Bankruptcy Court's order). Wilks failed to seek a stay even though a stay could have prevented consummation; entry of the Bankruptcy Court's order "was a condition precedent to the consummation of the Recapitalization Transaction." ROA.54; *see* ROA.1474. By failing to seek a stay, Wilks "permitted" "'a comprehensive change of circumstances to occur,'" "'render[ing] it inequitable'" for this Court to "reach the merits of [Wilks'] appeal." *Crystal Oil*, 854 F.2d at 82 (citation omitted). This factor strongly weighs in Calfrac's favor. *See GWI PCS 1*, 230 F.3d at 801.

### B.    The Plan Of Arrangement Has Been Consummated

The next factor the Court considers is "whether the plan has been 'substantially consummated.'" *Idearc*, 662 F.3d at 319 (citation omitted); *see Bank of N.Y. Tr. Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 242 (5th Cir. 2009) ("[P]lan consummation may often be dispositive of the question of equitable mootness."). "'[S]ubstantial consummation'" is the "yardstick" this Court uses to "inform[] [its] judgment as to when finality concerns and the reliance interests of third parties upon the plan as effectuated have become paramount to a resolution of the dispute between the parties on appeal." *GWI PCS 1*, 230 F.3d at 801 (citation omitted).  The focus is on the extent to which transactions proposed by a reorganization plan (or a foreign equivalent)—such as asset transfers, distributions, and the assumption of the debtor's business or property by the debtor or its successor—have been completed.  *See id.* (citing 11 U.S.C. § 1101(2)).

Here, the plan of arrangement was consummated almost two years ago, and Wilks has not claimed otherwise.  *See* ROA.3816-25.  Nor could it.  The Canadian Court approved the plan of arrangement and pronounced its final order on October 30, 2020, ROA.576; the Canadian Appeals Court upheld the final order on November 26, 2020 and issued its written decision on December 1, 2020, ROA.2262; ROA.3027-42; the Bankruptcy Court entered its order enforcing the

Canadian Court's final order within the United States on December 1 2020, ROA.3680-85; and the plan went into effect on December 18, 2020, ROA.3699-700.

All of the transactions called for by the plan have also been completed. Among other things, Calfrac's senior unsecured notes were exchanged for 92% of Calfrac's common shares, Calfrac completed its issuance of CAD$60 million of new 1.5 lien notes, warrants were issued to certain shareholders, and other shareholders were cashed out. ROA.55-57; *see supra* at 7-9. It is "virtually impossible to unwind" these transactions—particularly "given the trading . . . with respect to the securities issued" and how much time has passed. ROA.57; *see* Ellis Decl. ¶¶ 7-8. On this record, substantial consummation is an established, undisputed fact. *See, e.g.*, *Happy v. Equity Bank SSB (In re Green Aggregates Inc.)*, 345 F. App'x 890, 892 (5th Cir. 2009) (plan was substantially consummated when "the Debtor's old equity was extinguished," "new equity was issued," and "all plan distributions" commenced); ROA.3820 (Wilks acknowledging that "Appellees consummated the Plan of Arrangement").

### C.    Granting Wilks Relief Would Destroy The Benefits Of The Plan Of Arrangement And Affect Countless Parties Not Before The Court

As for "whether the relief requested would affect either the rights of parties not before the court or the success of the plan," *Idearc*, 662 F.3d at 319, here it would do both. The relief Wilks seeks would destroy the benefits of the plan of arrangement and would harm numerous Calfrac stakeholders who relied on the plan

by, among other things, participating in the transactions called for by the plan; amending the terms of Calfrac's credit facilities; being added as a lender on those facilities; and trading in Calfrac's notes, common shares, and warrants. *See supra* at 7-10.

That is by design. As explained in Calfrac's concurrently filed answering brief (at 12-14, 22-24, 35-36), Wilks wants to continue pursuing its (meritless) claim, including through litigation in New York state court, that the issuance of the 1.5 lien notes pursuant to the plan of arrangement caused an affiliate-transaction default on the second lien notes—with the goal of accelerating repayment of the second lien notes, causing a liquidity crunch at Calfrac, and unraveling the plan. *See, e.g.,* ROA.546 (Wilks' counsel describing the effects of a default); ROA.3822 (Wilks acknowledging that "a successful appeal would . . . lead to a series of further steps that could . . . result in the Second Lien Notes being accelerated" (emphasis omitted)). As the Canadian Court found and the Canadian Appeals Court affirmed, Wilks wants to do this not for any "legitimate commercial reason" as a creditor or shareholder of Calfrac, but to serve its interests as a competitor seeking to "purchase Calfrac's assets in a distressed situation." ROA.3040; *see* ROA.844-45.

Wilks has nonetheless argued that the relief it seeks would "not affect the success of the Plan of Arrangement" because (1) Calfrac was not "required" to obtain recognition of the plan in the Bankruptcy Court, so "a partial modification"

"cannot affect the Plan"; and (2) Wilks claimed not to be seeking to "reverse the Plan of Arrangement or unwind any of the transactions accomplished by its terms." ROA.3819. Wilks' arguments do not withstand scrutiny.

Wilks has fought the plan of arrangement every step of the way. *See supra* at 4-7; Calfrac Br. 6-9, 12-14, 22-24. And the argument it continues to present is little more than a collateral attack on the plan itself. Wilks takes direct aim at the issuance of the 1.5 lien notes, which was part of the plan, and it seeks to accelerate the second lien notes when a critical feature of the plan was to keep them in place. *See, e.g.*, ROA.602-03, 605, 617; ROA.2909.

At a minimum, Wilks' gambit would force Calfrac to incur additional legal fees (which would harm its other creditors and shareholders) and create uncertainty over the plan of arrangement that could affect Calfrac's stock price, as well as its relationships with lenders, trade partners, and others. And if Wilks were to actually succeed in accomplishing its express objective, Calfrac could be "forced into" an "insolvency process[] where the stakeholders"—*including Wilks itself*—would "realize less than they would receive under the Arrangement." ROA.841; *see, e.g.*, ROA.546 (Wilks' counsel arguing that acceleration of the second lien notes "will cause the immediate insolvency of Calfrac").

In short, Wilks seeks "wholesale annihilation" of the plan of arrangement— which, if permitted, would plainly undermine the success of the plan and the rights

of parties not before the Court. *Manges*, 29 F.3d at 1043; *see Idearc*, 662 F.3d at 319 ("The ultimate inquiry [for equitable mootness] is 'whether the court can grant relief without undermining the plan.'" (citation omitted)).

### D.    Granting Wilks Relief Would Be Profoundly Inequitable

The factors described above are "useful" for applying the doctrine of equitable mootness, but are "not inclusive of all considerations that may sometimes be appropriate." *Blast Energy*, 593 F.3d at 424 n.4. "As the doctrine is an equitable one, principles of equity are generally relevant to the analysis," and other factors "may be pertinent." *Id.* Particularly given Wilks' improper motives, opportunistic behavior, and lack of a significant continuing interest in the second lien notes, the equities clearly favor Calfrac.

Wilks' only argument in this appeal concerns an alleged default on the second lien notes. *See supra* at 10; Calfrac Br. 35-37. Wilks acquired second lien notes knowing that Calfrac was discussing a potential restructuring—and, as the Canadian Court found, "aggressively purchased" those notes "in an attempt to block" the restructuring for the "improper purpose" of acquiring Calfrac or its assets at distressed prices. ROA.845; *see* ROA.3040. Since then, Wilks apparently has sold nearly all of its second lien notes—reducing its position to less than *US$1.8 million* (*1.5%* of the total) from US$67.3 million (56.1% of the total). Ellis Decl. ¶¶ 15, 17-18. And it presumably has walked away with a substantial profit. Wilks bought its

second lien notes for about 70 cents on the dollar. *See* ROA.3377-78; Ellis Decl. ¶ 19. Those notes have risen in value since the plan of arrangement was consummated, and now trade for *over 90 cents* on the dollar. *See* Ellis Decl. ¶ 20. If Wilks sold US$65.5 million of second lien notes for even 73 cents on the dollar, it would have turned profits that exceed its current position. It probably earned much more.

Even though Wilks now holds only a token amount of second lien notes, it continues to assert harm to the second lien noteholders as a justification for blowing up the plan of arrangement. *See, e.g.*, Opening Br. 29-31. But well over 50% of the second lien notes—including those previously owned by Wilks—traded after the plan went into effect and thus with notice of the plan, have gone up in value, and could be jeopardized if Wilks were allowed to challenge the Bankruptcy Court's order.

Notably too, it is far less likely now that Wilks could achieve much even if it did succeed in overturning the Bankruptcy Court's order. As Wilks notes in its opening brief (at 7), when it held over 25% of the second lien notes, it was able to unilaterally give Calfrac notice of an alleged default and accelerate the notes. *See* ROA.964, 966-67. Because Wilks no longer holds 25% of the second lien notes, it cannot, on its own, do what it says it wants to do: declare a default, accelerate the notes, and litigate the default in New York state court. *See, e.g.*, Opening Br. 7, 28-

31.  Nor is there evidence that any other second lien noteholder would support Wilks in this pointless endeavor.

Under these circumstances, there can be no question that the equities favor Calfrac.  Wilks already received ample process, having litigated and lost before four different courts in Canada and the United States.  It has, in essence, profitably liquidated its position in the second lien notes on which all of its arguments rest.  At this late stage, it would be profoundly inequitable to let Wilks throw the plan of arrangement into disarray—and harm the vast majority of Calfrac's stakeholders, including the holders of 98.5% of the second lien notes it is purporting to protect— all so that it can pursue a meritless default for the improper purpose of furthering its parochial interests in acquiring Calfrac's assets.

## CONCLUSION

The Court should dismiss this appeal as equitably moot.

Dated:  October 3, 2022

Respectfully submitted,

   s/ *Melissa Arbus Sherry*

Christopher R. Harris
Adam J. Goldberg
Nacif Taousse
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Melissa Arbus Sherry
Eric J. Konopka
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
melissa.sherry@lw.com

*Counsel for Appellees*

## CERTIFICATE OF CONFERENCE

On September 30, 2022, I conferred with Daniel A. Fliman, counsel for Appellants, who stated that Appellants oppose the relief requested in this motion.

Dated:  October 3, 2022                          _s/ Melissa Arbus Sherry_
                                                                Melissa Arbus Sherry

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2022, the foregoing motion was electronically filed with the Clerk of the United States Court of Appeals for the Fifth Circuit through the Court's CM/ECF system.  All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

Dated:  October 3, 2022                          _s/ Melissa Arbus Sherry_
                                                                Melissa Arbus Sherry

## ECF CERTIFICATION

I hereby certify (i) the required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (ii) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; and (iii) the document has been scanned for viruses using Microsoft Defender and is free of viruses.

Dated:  October 3, 2022                          _s/ Melissa Arbus Sherry_
                                                                Melissa Arbus Sherry

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,564 words, excluding the parts exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f) and Fifth Circuit Rule 32.2.

This motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a) and Fifth Circuit Rule 32.1 because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 with 14-point Times New Roman font.

Dated:  October 3, 2022                    *s/ Melissa Arbus Sherry*
                                           Melissa Arbus Sherry

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

| | |
|---|---|
| IN RE: CALFRAC WELL SERVICES CORPORATION, et al., <br><br> *Chapter 15 Debtors*. <br><br> WILKS BROTHERS, L.L.C. AND ITS AFFILIATED FUNDS, <br><br> *Appellant*, <br><br> v. <br><br> RONALD P. MATHISON, IN HIS CAPACITY AS THE FOREIGN REPRESENTATIVE OF THE CHAPTER 15 DEBTORS, et al., <br><br> *Appellees*. | Case No. 21-20290 |

**DECLARATION OF JEFFREY I. ELLIS
IN SUPPORT OF APPELLEES' MOTION TO DISMISS**

I, Jeffrey I. Ellis, declare as follows:

1.     I am the general counsel and corporate secretary of Calfrac Well Services Ltd. ("Calfrac"), a Chapter 15 debtor and Appellee in the above-captioned appeal and the ultimate parent of the other Chapter 15 debtors in the above-captioned appeal.  I submit this declaration in support of Appellees' motion to dismiss the above-captioned appeal as equitably moot.

1

**Numerous Parties Have Relied On The Plan Of
Arrangement Consummated Nearly Two Years Ago**

2.    On July 13, 2020, Calfrac and certain of its subsidiaries commenced a proceeding in the Court of Queen's Bench of Alberta (now the Court of King's Bench of Alberta) to seek approval of a recapitalization transaction pursuant to a plan of arrangement under the *Canada Business Corporations Act*.

3.    The plan of arrangement was approved, over the objection of Wilks Brothers, L.L.C. and/or its affiliated funds ("Wilks"), the Appellants in the above-captioned appeal.  As explained in more detail in the *Declaration of Ronald P. Mathison in Support of Appellees' Motion to Dismiss Appeal as Equitably Moot*— which is in the record at ROA.52-58—the recapitalization implemented through the plan of arrangement provided for an array of integrated transactions, all of which were completed on December 18, 2020, including:

a.    an amendment to the terms of Calfrac's secured revolving credit facilities, as well as a paydown and reduction of the facilities from CAD$375 million to CAD$290 million;

b.    the conversion of senior unsecured notes to common shares of Calfrac;

c.    a 50-to-1 share consolidation;

       d.     the issuance of CAD$60 million in 1.5 lien notes due December 18, 2023 (the "1.5 Lien Notes"), which are convertible into common shares of Calfrac;

       e.     the issuance of warrants to purchase Calfrac's common shares; and

       f.     the repurchase of certain common shares of Calfrac.

4.     In the nearly two years since December 18, 2020, there have been additional changes to the terms of Calfrac's outstanding debt.

       a.     On June 30, 2021, Calfrac extended the maturity of its secured revolving credit facilities from June 1, 2022 to July 1, 2023, and further reduced the credit facilities to CAD$225 million.

       b.     Calfrac has since amended the terms of the credit facilities four times, including to add a new lender, to increase the capacity of the facilities to CAD$250 million, and to provide additional liquidity. The most recent amendment—which amended and restated the credit agreement and, among other things, extended the maturity of the facility to July 1, 2024—was closed on September 29, 2022.

       c.     In the first quarter of 2022, Calfrac executed a bridge loan to fund its short-term working capital requirements. The bridge loan was repaid and cancelled on June 27, 2022.

3

5.     There have also been transactions in the 1.5 Lien Notes issued pursuant to the plan of arrangement.

a.     In March 2021, an institutional investor rescinded its purchase of CAD$1,050,000 of 1.5 Lien Notes.

b.     As of September 29, 2022, approximately CAD$2,897,000 of 1.5 Lien Notes have been converted into common shares of Calfrac.  As a result of the rescission and these conversions, approximately CAD$56,053,000 of 1.5 Lien Notes remain outstanding.

c.     I am aware of approximately CAD$2,781,000 of 1.5 Lien Notes that are in the process of being converted into common shares of Calfrac.  When these conversions are completed, approximately CAD$53,272,000 of 1.5 Lien Notes will be outstanding.

d.     Although Calfrac has the option to pay interest on the 1.5 Lien Notes "in kind"—*i.e.*, by increasing the principal amount of 1.5 Lien Notes—Calfrac has opted to pay all interest payments on the 1.5 Lien Notes in cash.  Since the 1.5 Lien Notes were issued, Calfrac has paid approximately CAD$10.2 million in interest on the 1.5 Lien Notes.

6.     Pursuant to the plan of arrangement, approximately 5,824,362 warrants to purchase shares of Calfrac's common stock were issued.  As of September 30,

2022, approximately 399,815 warrants have been exercised or cancelled.  As a result, there are now approximately 5,424,547 warrants outstanding.

7.    On December 18, 2020, the outstanding common shares of Calfrac were consolidated on a 50-to-1 basis pursuant to the plan of arrangement.  On December 29, 2020, the shares commenced trading on the Toronto Stock Exchange on a post-share consolidation basis.    After the plan of arrangement was consummated and before the common shares began trading on a post-consolidation basis, approximately 17,465,832 shares were traded according to data from the Toronto Stock Exchange, or 349,316 shares on a post-consolidation basis.  Between December 29, 2020 and September 30, 2022, approximately 31,372,811 common shares of Calfrac were traded according to data from the Toronto Stock Exchange.  Thus, cumulatively, between consummation of the plan of arrangement and September 30, 2022, approximately 31,722,127 common shares were traded on a post-consolidation basis.

8.    The warrants issued on December 18, 2020 pursuant to the plan of arrangement commenced trading on the Toronto Stock Exchange on December 29, 2020.    Between December 29, 2020 and September 30, 2022, approximately 3,308,142 warrants of Calfrac were traded according to data from the Toronto Stock Exchange.

9.     Calfrac uses the same Toronto Stock Exchange data in preparing the trading data of its publicly-listed securities required to be disclosed in its Annual Information Form, an annual disclosure document required by Canadian securities laws.

## Wilks Has Reduced Its Second Lien Note Position

10.     A subsidiary of Calfrac, Calfrac Holdings LP, issued US$120,000,100 of second lien notes due March 15, 2026 (the "Second Lien Notes").  The Second Lien Notes are held under two unique security identifiers (known as "CUSIPs"): 12958RAE7 and U1255TAB9.

11.     Based on my personal knowledge and information available to me, I understand that Wilks purchased US$60,001,400 of Second Lien Notes in June 2020 and US$7,291,900 of Second Lien Notes in July 2020, for a total position of US$67,293,300 as of July 2020.  (Dollar figures are principal amounts of Second Lien Notes.)  As a result, Wilks held approximately 56.1% of the Second Lien Notes as of July 2020.

a.     In the opening brief that Wilks filed in the above-captioned appeal (at page 6), Wilks asserts that it is "a holder of 10.875% Second Lien Secured Notes" issued by Calfrac Holdings LP.  For that proposition, Wilks cites ROA.3378, which is a report from Canada's System for Electronic Disclosure by Insiders ("SEDI")  under the insider name "Wilks, Dan."

b.    The SEDI report shows purchases of Second Lien Notes in June and July 2020 totaling US$67,293,300.

c.    Each purchase of Second Lien Notes shows that "Control or Direction" was by THRC Holdings LP ("THRC"), which I understand to mean that THRC acquired the Second Lien Notes. Wilks disclosed THRC as a fund affiliated with Wilks Brothers, L.L.C., and thus as an Appellant, in the opening brief filed in the above-captioned appeal (at page i). THRC is also the entity that issued a takeover bid to Calfrac's shareholders as an affiliate of Wilks Brothers, L.L.C., as shown in the record at ROA.3507. Based on this information, I understand that Wilks acquired its Second Lien Notes through THRC.

d.    A true and complete copy of a report from SEDI's public website (www.sedi.ca) showing insider transaction detail under the insider name "Wilks, Dan" as of September 30, 2022 is attached hereto as **Exhibit A**. This report is similar to the report in the record at ROA.3376-79, except that it includes additional details for each transaction record and also includes transactions related to Cathedral Energy Services Ltd., which is not affiliated with Calfrac.

12.    The Second Lien Notes were issued as global notes in book entry format with the Depository Trust Company ("DTC") serving as the depositary and holder of record for the Second Lien Notes. As depositary, DTC holds the Second Lien Notes as a custodian for the beneficial holders thereof.

13.    According to a security position report obtained from DTC—which maintains records on the owners of the Second Lien Notes—Citigroup Global Markets Inc. ("CGMI") held US$67,293,300 of Second Lien Notes under CUSIP 12958RAE7 as of September 21, 2020.

14.    I understand that many owners of securities hold their securities through brokerage firms, and that their ownership is recorded in the name of the brokerage firm rather than their own name.  (This practice is commonly known as holding securities in "street name.")  CGMI's record ownership of US$67,293,300 of Second Lien Notes exactly matched Wilks' then-known holdings of Second Lien Notes (through THRC), suggesting that Wilks held its Second Lien Notes in street name through a brokerage account at CGMI.

15.    Between April and September 2022, I obtained new information that led me to believe that Wilks had reduced its holdings of Second Lien Notes from US$67,293,300 to US$1,793,300, or approximately 1.5% of the total outstanding Second Lien Notes.

a.    I obtained lists of "non-objecting beneficial owners" as of April 8, 2022 from Broadridge Financial Services ("Broadridge") for CUSIP 12958RAE7 and CUSIP U1255TAB9.  I understand that a non-objecting beneficial owner is a beneficial owner of securities, who likely holds its securities in street name, that allows disclosure of its name and its position in a security to the issuer of the security.

These lists showed that Wilks (through THRC) held US$1,793,300 of Second Lien Notes under CUSIP 12958RAE7.  These lists also showed that CGMI reported one non-objecting beneficial owner owning US$1,793,300 of Second Lien Notes under CUSIP 12958RAE7, further corroborating that Wilks held its Second Lien Notes through a brokerage account at CGMI.

      b.      I also obtained security position reports as of September 15, 2022 from DTC for both CUSIP 12958RAE7 and CUSIP U1255TAB9.  These reports showed that CGMI held US$1,793,300 of Second Lien Notes under CUSIP 12958RAE7, exactly matching Wilks' position as shown on the list of non-objecting beneficial owners.

      c.      I obtained lists of non-objecting beneficial owners as of September 19, 2022 from Broadridge for both CUSIP 12958RAE7 and CUSIP U1255TAB9.  These lists again showed that Wilks (through THRC) held US$1,793,300 of Second Lien Notes under CUSIP 12958RAE7, and that CGMI reported one non-objecting beneficial owner owning US$1,793,300 of Second Lien Notes under CUSIP 12958RAE7.

16.    On or about September 16, 2022, Calfrac engaged Ipreo by IHS Markit ("Ipreo"), a subsidiary of S&P Global, to perform noteholder diligence to identify the beneficial owners of the Second Lien Notes.  I understand that Ipreo performs this service for hundreds of issuers of securities each year, and that issuers regularly

rely on the results of Ipreo's diligence.  Calfrac has used Ipreo's services in the past for investor relations and other ordinary business purposes unrelated to litigation.

17.    I have reviewed the results of Ipreo's noteholder diligence.

a.    Ipreo identified the beneficial owners of US\$90,798,191 of the Second Lien Notes held under CUSIP 12958RAE7, or 92.1% of the US\$98,597,050 total Second Lien Notes held under that CUSIP.

b.    Ipreo identified the beneficial owners of US\$18,340,450 of the Second Lien Notes held under CUSIP U1255TAB9, or 85.7% of the US\$21,403,050 total Second Lien Notes held under that CUSIP.

c.    According to Ipreo's diligence, Wilks (through THRC) holds US\$1,793,300 of Second Lien Notes under CUSIP 12958RAE7, or approximately 1.5% of the total Second Lien Notes outstanding.

d.    According to Ipreo's diligence, the top three holders of Second Lien Notes are Canadian investment management firms/mutual fund managers, who hold US\$35,560,950, US\$34,733,000, and US\$15,081,425 of Second Lien Notes, respectively, across both CUSIP 12958RAE7 and CUSIP U1255TAB9.  These three firms thus collectively hold US\$85,375,375 of Second Lien Notes, or approximately 71.1% of the total Second Lien Notes outstanding.

e.    According to Ipreo's diligence, two entities affiliated with George Armoyan, a member of Calfrac's board of directors, collectively hold

US$16,371,450 of Second Lien Notes under CUSIP 12958RAE7, or approximately

13.6% of the total Second Lien Notes outstanding.

       f.    Ipreo also identified other institutional and individual investors

who collectively hold US$5,598,516 of Second Lien Notes across both CUSIP

12958RAE7 and CUSIP U1255TAB9, or approximately 4.7% of the total Second

Lien Notes outstanding.

       18.    Based on the results of Ipreo's diligence and the other documents

described in ¶¶ 11-17, it appears to me that Wilks has reduced its position in the

Second Lien Notes to US$1,793,300, or approximately 1.5% of the total Second

Lien Notes outstanding, and that the vast majority of Second Lien Notes are now

held by others.

**The Second Lien Notes Have Substantially Increased In Value**

       19.    As discussed in ¶ 11 above, Wilks filed information about its purchases

of Second Lien Notes in SEDI, which is summarized in the record at ROA.3377-78.

According to that information, Wilks purchased its Second Lien Notes at prices

ranging from US$0.60 per US$1 of face value to US$0.79 per US$1 of face value.

This information indicates that Wilks purchased Second Lien Notes at a weighted-

average price of US$0.7009 per US$1 of face value.  A summary of this information

is shown in the following table:

| Date | Price (US$) | Face Amount (US$) |
|------|-------------|-------------------|
| 6/11/2020 | $0.6000 | $7,156,700 |
| 6/15/2020 | $0.6050 | $11,689,700 |
| 6/16/2020 | $0.6150 | $2,040,000 |
| 6/17/2020 | $0.6600 | $8,910,000 |
| 6/18/2020 | $0.7525 | $3,000,000 |
| 6/19/2020 | $0.7800 | $1,890,350 |
| 6/19/2020 | $0.7900 | $7,000,000 |
| 6/24/2020 | $0.7700 | $5,000,000 |
| 6/25/2020 | $0.7600 | $11,314,650 |
| 6/26/2020 | $0.7613 | $2,000,000 |
| 7/21/2020 | $0.7450 | $7,291,900 |
| Total | $0.7009 | $67,293,300 |

20.    Based on data obtained from Bloomberg, a leading provider of market data, the price of the Second Lien Notes has increased significantly since July 2020. The last-available bid/ask prices reported on Bloomberg on September 30, 2022 for CUSIP 12958RAE7 were 89.903/91.995, which I understand to mean that there was a bid to buy Second Lien Notes for US$0.89903 per US$1 of face value and an offer to sell Second Lien Notes for US$0.91995 per US$1 of face value.[1]  The midpoint of that range is US$0.90949 per US$1 of face value.  A table of data showing the bid/ask prices of Second Lien Notes traded under CUSIP 12958RAE7 after June 11, 2020 (the first reported purchase date of Second Lien Notes by Wilks), as reported by Bloomberg, is attached hereto as **Exhibit B**.  Below is a chart prepared in

---

[1]    The bid/ask prices reported by Bloomberg for CUSIP U1255TAB9 were the same, but are not presented here because, according to the information presented in ¶¶ 11-17, Wilks has held only CUSIP 12958RAE7.

Microsoft Excel showing the midpoint of these bid/ask prices and Wilks' weighted-average purchase price:



21.    Based on this trading data, it appears to me that Wilks likely earned significant profit on the sales of its Second Lien Notes after the plan of arrangement was consummated, and that profit likely exceeds the face amount of Wilks' remaining holdings of Second Lien Notes.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 3, 2022.

Jeffrey I. Ellis

13

# EXHIBIT A

**Report from System for
Electronic Disclosure by Insiders
as of September 30, 2022**

2022-09-30 14:07 ET

# Insider transaction detail - View details for insider with remarks

**Transactions sorted by** : Insider
**Insider family name** : wilks ( Starts with )
**Debt securities** : Bonds, Commercial Paper, Convertible Debentures, Convertible Notes, Debentures, Medium Term notes, Notes, Promissory Notes, Other
**Equity securities** : American Depository Receipts, Common Shares, Convertible Preferred Shares, Exchangeable Shares, General Partnership Units, Instalment Receipts, Limited Partnership Units, Multiple Voting Shares, Non-Voting Shares, Participation Units, Preferred Shares, Special Shares, Subordinate Voting Shares, Trust Units, Units, Other
**Third party derivatives** : Equity Swap - Long Position, Equity Swap - Short Position, Equity Swap, Exchange Traded Call Options, Exchange Traded Put Options, Forward Purchase, Forward Sale, Futures Contract - Long Position, Futures Contract - Short Position, OTC Calls (including Private Options to Purchase), OTC Puts (including Private Options to Sell), Other
**Issuer derivatives** : Options, Rights, Special Warrants, Subscription Rights, Warrants, Other

**Insider name:** Wilks, Dan

**Legend:** O - Original transaction, A - First amendment to transaction, A' - Second amendment to transaction, AP - Amendment to paper filing, etc.

Insider's Relationship to Issuer: 1 - Issuer, 2 - Subsidiary of Issuer, 3 - 10% Security Holder of Issuer, 4 - Director of Issuer, 5 - Senior Officer of Issuer, 6 - Director or Senior Officer of 10% Security Holder, 7 - Director or Senior Officer of Insider of Subsidiary of Issuer (other than in 4,5,6), 8 - Deemed Insider - 6 Months before becoming Insider.

**Warning:** The closing balance of the " equivalent number or value of underlying securities" reflects the" total number or value of underlying securities" to which the derivative contracts held by the insider relate. This disclosure does not mean and should not be taken to indicate that the underlying securities have, in fact, been acquired or disposed of by the insider.

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of securities | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Issuer name:** Calfrac Well Services Ltd.

**Insider's Relationship to Issuer:** 3 - 10% Security Holder of Issuer

**Ceased to be Insider:** 2020-12-18

**Security designation: Common Shares**

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type and registered holder, if applicable | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3040763 | 2017-07-20 | 2017-07-30 | Control or Direction : Dan and Staci Wilks | 00 - Opening Balance-Initial SEDI Report | | | 7,863,100 | | | | | |
| General remarks: The insider's holdings, together with the holdings of its joint actors, represent more than 10 percent, as disclosed in the Early Warning Report dated July 21, 2017. | | | | | | | | | | | | |
| 3050813 | 2017-08-23 | 2017-08-25 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +2,094,577 | 3.4200 | 9,957,677 | | | | | |
| General remarks: The insider's holdings, together with the holdings of its joint actors, represent more than 10 percent, as disclosed in the Early Warning Report dated August 25, 2017. | | | | | | | | | | | | |
| 3085120 | 2017-11-14 | 2017-11-18 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +385,800 | 5.6445 | 10,343,477 | | | | | |
| General remarks: | | | | | | | | | | | | |
| 3085283 | 2017-11-16 | 2017-11-20 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +566,000 | 5.7801 | 10,909,477 | | | | | |
| General remarks: | | | | | | | | | | | | |

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3087375 | 2017-11-22 | 2017-11-24 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +423,000 | 5.9800 | 11,332,477 | | | | | |

General remarks:

## Security designation: Notes 10.875% Second Lien Secured Notes due 2026

| Transaction ID | Date of transaction | Date of filing | Ownership type | Nature of transaction | Number or value | Unit price | Closing balance |
|---|---|---|---|---|---|---|---|
| 3565095 | 2017-07-20 | 2020-06-18 | Control or Direction : THRC Holdings LP | 00 - Opening Balance-Initial SEDI Report | | | |

General remarks:

| O 3565102 | 2020-06-11 | 2020-06-18 | Control or Direction : THRC Holdings LP | 97 - Other | +$7,156,700 | 0.6000USD | |

General remarks: The Notes were acquired in the secondary bond market. The unit price was US$0.60 per US$. Accrued interest of US$194,572.78 was also paid.

| A 3565102 | 2020-06-11 | 2020-06-18 | Control or Direction : THRC Holdings LP | 97 - Other | +$7,156,700 | 0.6000USD | $7,156,700 |

General remarks: The Notes were acquired in the secondary bond market. The unit price was US$0.60 per US$1 of par value. Accrued interest of US$194,572.78 was also paid.

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type and registered holder, if applicable | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3565116 | 2020-06-15 | 2020-06-18 | Control or Direction: THRC Holdings LP | 97 - Other | +$11,689,700 | 0.6050USD | $18,846,400 | | | | | |
| **General remarks:** The Notes were acquired in the secondary bond market. The unit price was US$0.6050 per US$1 of par value. No accrued interest was paid. | | | | | | | | | | | | |
| 3565121 | 2020-06-16 | 2020-06-18 | Control or Direction: THRC Holdings LP | 97 - Other | +$2,040,000 | 0.6150USD | $20,886,400 | | | | | |
| **General remarks:** The Notes were acquired in the secondary bond market. The unit price was US$0.6150 per US$1 of par value. Accrued interest was not paid. | | | | | | | | | | | | |
| 3565125 | 2020-06-17 | 2020-06-18 | Control or Direction: THRC Holdings LP | 97 - Other | +$8,910,000 | 0.6600USD | $29,796,400 | | | | | |
| **General remarks:** The Notes were acquired in the secondary bond market. The unit price was US$0.66 per US$1 of par value. Accrued interest of US$253,006.88 was also paid. | | | | | | | | | | | | |
| 3566357 | 2020-06-18 | 2020-06-22 | Control or Direction: THRC Holdings LP | 97 - Other | +$3,000,000 | 0.7525USD | $32,796,400 | | | | | |
| **General remarks:** The Notes were acquired in the secondary bond market. The unit price was US$0.7525 per US$1 of par value. No accrued interest was paid. | | | | | | | | | | | | |

-4-

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3566358 | 2020-06-19 | 2020-06-22 | Control or Direction : THRC Holdings LP | 97 - Other | +$1,890,350 | 0.7800USD | $34,686,750 | | | | | |
| | **General remarks:** | The Notes were acquired in the secondary bond market. The unit price was US$0.7800 per US$1 of par value. No accrued interest was paid. | | | | | | | | | | |
| 3566359 | 2020-06-19 | 2020-06-22 | Control or Direction : THRC Holdings LP | 97 - Other | +$7,000,000 | 0.7900USD | $41,686,750 | | | | | |
| | **General remarks:** | The Notes were acquired in the secondary bond market. The unit price was US$0.7900 per US$1 of par value. No accrued interest was paid. | | | | | | | | | | |
| 3568409 | 2020-06-24 | 2020-06-29 | Control or Direction : THRC Holdings LP | 97 - Other | +$5,000,000 | 0.7700USD | $46,686,750 | | | | | |
| | **General remarks:** | The Notes were acquired in the secondary bond market. The unit price was US$0.77 per US$1 of par value. Accrued interest of US$152,552.08 was paid. | | | | | | | | | | |
| 3568410 | 2020-06-25 | 2020-06-29 | Control or Direction : THRC Holdings LP | 97 - Other | +$11,314,650 | 0.7600USD | $58,001,400 | | | | | |
| | **General remarks:** | The Notes were acquired in the secondary bond market. The unit price was US$0.76 per US$1 of par value. No accrued interest was paid. | | | | | | | | | | |

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3586414 | 2020-06-26 | 2020-06-29 | Control or Direction: THRC Holdings LP | 97 - Other | +$2,000,000 | 0.7613USD | $60,001,400 | | | | | |
| **General remarks:** The Notes were acquired in the secondary bond market. The unit price was US$0.76125 per US$1 of par value. No accrued interest was paid. | | | | | | | | | | | | |
| 3579455 | 2020-07-21 | 2020-07-22 | Control or Direction: THRC Holdings LP | 97 - Other | +$7,291,900 | 0.7450USD | $67,293,300 | | | | | |
| **General remarks:** The Notes were acquired in the secondary bond market. The unit price was US$0.7450 per US$1 of par value. No accrued interest was paid. | | | | | | | | | | | | |

**Security designation:** Notes 8.50% Senior Unsecured Notes due 2026

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3579449 | 2017-07-20 | 2020-07-22 | Control or Direction: THRC Holdings LP | 00 - Opening Balance–Initial SEDI Report | | | | | | | | |
| **General remarks:** | | | | | | | | | | | | |
| 3579451 | 2020-07-17 | 2020-07-22 | Control or Direction: THRC Holdings LP | 97 - Other | +$8,651,000 | 0.1025USD | $8,651,000 | | | | | |
| **General remarks:** The Notes were acquired in the secondary bond market. The unit price was US$0.1025 per US$1 of par value. No accrued interest was paid. | | | | | | | | | | | | |

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3579452 | 2020-07-21 | 2020-07-22 | Control or Direction: THRC Holdings LP | 97 - Other | +$12,780,000 | 0.1050USD | $21,431,000 | | | | | |
| **General remarks:** The Notes were acquired in the secondary bond market. The unit price was US$0.1050 per US$1 of par value. No accrued interest was paid. | | | | | | | | | | | | |
| 3579896 | 2020-07-22 | 2020-07-23 | Control or Direction: THRC Holdings LP | 97 - Other | +$8,000,000 | 0.1050USD | $29,431,000 | | | | | |
| **General remarks:** The Notes were acquired in the secondary bond market. The unit price was US$0.1050 per US$1 of par value. No accrued interest was paid. | | | | | | | | | | | | |

**Issuer name:** Cathedral Energy Services Ltd.

**Insider's Relationship to Issuer:** 3 - 10% Security Holder of Issuer

**Ceased to be Insider:** Not applicable

**Security designation:** Common Shares

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3071347 | 2017-10-06 | 2017-10-16 | Control or Direction: Dan and Staci Wilks | 00 - Opening Balance-Initial SEDI Report | | | 4,748,212 | | | | | |
| **General remarks:** The insider's holdings, together with the holdings of his joint actors, represent more than 10 percent, as disclosed in the Early Warning Report dated October 10, 2017. | | | | | | | | | | | | |
| 3073347 | 2017-10-18 | 2017-10-23 | Control or Direction: Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +57,100 | 1.3458 | 4,805,312 | 4,805,312 | | | | |

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **General remarks:** | | | | | | | | | |
| 3073348 | 2017-10-19 | 2017-10-23 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +625,100 | 1.3500 | 5,430,412 | 5,430,412 | | | | |
| | | | **General remarks:** | | | | | | | | | |
| 3075508 | 2017-10-25 | 2017-10-30 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +156,200 | 1.3740 | 5,586,612 | | | | | |
| | | | **General remarks:** | | | | | | | | | |
| 3075511 | 2017-10-26 | 2017-10-30 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +133,000 | 1.4925 | 5,719,612 | | | | | |
| | | | **General remarks:** | | | | | | | | | |
| 3075513 | 2017-10-27 | 2017-10-30 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +296,122 | 1.5876 | 6,015,734 | | | | | |
| | | | **General remarks:** | | | | | | | | | |

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3086243 | 2017-11-03 | 2017-11-08 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +62,000 | 1.5800 | 6,077,734 | | | | | |
| | General remarks: | | | | | | | | | | | |
| 3085118 | 2017-11-13 | 2017-11-18 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +156,800 | 1.6414 | 6,234,534 | | | | | |
| | General remarks: | | | | | | | | | | | |
| 3085119 | 2017-11-14 | 2017-11-18 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +56,200 | 1.5977 | 6,290,734 | | | | | |
| | General remarks: | | | | | | | | | | | |
| 3085281 | 2017-11-15 | 2017-11-20 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +67,400 | 1.5972 | 6,358,134 | | | | | |
| | General remarks: | | | | | | | | | | | |

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3087370 | 2017-11-20 | 2017-11-24 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +69,700 | 1.6649 | 6,427,834 | | | | | |
| | General remarks: | | | | | | | | | | | |
| 3088141 | 2017-11-24 | 2017-11-27 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +596,700 | 1.7491 | 7,024,534 | | | | | |
| | General remarks: | | | | | | | | | | | |
| 3090326 | 2017-11-29 | 2017-12-01 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +1,306,700 | 1.7153 | 8,331,234 | | | | | |
| | General remarks: | | | | | | | | | | | |
| 3100178 | 2017-12-13 | 2017-12-18 | Control or Direction : Dan and Staci Wilks | 10 - Acquisition or disposition in the public market | +437,500 | 1.8500 | 8,768,734 | | | | | |
| | General remarks: | | | | | | | | | | | |

-10-

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3741488 | 2021-05-07 | 2021-05-10 | Control or Direction : Dan and Staci Wilks | 16 - Acquisition or disposition under a prospectus exemption | +2,140,000 | 0.2500 | 10,908,734 | | | | | |
| General remarks: | | | | | | | | | | | | |
| 3925045 | 2022-02-10 | 2022-04-05 | Control or Direction : Dan and Staci Wilks | 16 - Acquisition or disposition under a prospectus exemption | +3,306,000 | 0.4400 | 14,214,734 | | | | | |
| General remarks: | | | | | | | | | | | | |
| 3936202 | 2022-04-25 | 2022-04-26 | Control or Direction : Dan and Staci Wilks | 15 - Acquisition or disposition under a prospectus | +10,000,000 | 0.7000 | 24,214,734 | | | | | |
| General remarks: | | | | | | | | | | | | |

**Security designation: Warrants (Common Shares)**

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3936204 | 2017-10-06 | 2022-04-26 | Control or Direction : Dan and Staci Wilks | 00 - Opening Balance-Initial SEDI Report | | | | | | Common Shares | | |
| General remarks: | | | | | | | | | | | | |

| Transaction ID | Date of transaction YYYY-MM-DD | Date of filing YYYY-MM-DD | Ownership type (and registered holder, if applicable) | Nature of transaction | Number or value acquired or disposed of | Unit price or exercise price | Closing balance | Insider's calculated balance | Conversion or exercise price | Underlying security designation | Equivalent number or value of underlying securities acquired or disposed of | Closing balance of equivalent number or value of underlying securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3936207 | 2022-04-25 | 2022-04-26 | Control or Direction : Dan and Staci Wilks | 16 - Acquisition or disposition under a prospectus exemption | +5,000,000 | | 5,000,000 | | 0.8500 | 2023-04-25 Common Shares | +5,000,000 | 5,000,000 |

General remarks:

-12-

# EXHIBIT B

**Bloomberg Pricing Data
for CUSIP 12958RAE7
from June 12, 2020
to September 30, 2022**

CFWCN 10 ⅜ 03/15/2026 144A Corp     12958RAE7

| Day of Week | Date | Bid | Ask |
|---|---|---|---|
| Fr | 9/30/2022 | 89.903 | 91.995 |
| Th | 9/29/2022 | 89.724 | 91.998 |
| We | 9/28/2022 | 90.066 | 91.998 |
| Tu | 9/27/2022 | 89.735 | 92 |
| Mo | 9/26/2022 | 89.689 | 92 |
| | | | |
| Fr | 9/23/2022 | 90.623 | 91.996 |
| Th | 9/22/2022 | 90.575 | 91.995 |
| We | 9/21/2022 | 90.563 | 91.994 |
| Tu | 9/20/2022 | 90.176 | 91.729 |
| Mo | 9/19/2022 | 90.171 | 91.691 |
| | | | |
| Fr | 9/16/2022 | 90.164 | 91.659 |
| Th | 9/15/2022 | 90.906 | 92.188 |
| We | 9/14/2022 | 90.945 | 92.268 |
| Tu | 9/13/2022 | 90.521 | 92 |
| Mo | 9/12/2022 | 90.525 | 92 |
| | | | |
| Fr | 9/9/2022 | 90.63 | 91.999 |
| Th | 9/8/2022 | 90.488 | 91.998 |
| We | 9/7/2022 | 90.472 | 91.998 |
| Tu | 9/6/2022 | 90.43 | 91.997 |
| | | | |
| Fr | 9/2/2022 | 90.463 | 91.994 |
| Th | 9/1/2022 | 90.629 | 91.977 |
| We | 8/31/2022 | 90.71 | 92.098 |
| Tu | 8/30/2022 | 90.718 | 92.11 |
| Mo | 8/29/2022 | 90.725 | 92.122 |
| | | | |
| Fr | 8/26/2022 | 90.85 | 92 |
| Th | 8/25/2022 | 90.825 | 92 |
| We | 8/24/2022 | 90.847 | 92 |
| Tu | 8/23/2022 | 90.825 | 91.998 |
| Mo | 8/22/2022 | 91.35 | 92.47 |
| | | | |
| Fr | 8/19/2022 | 91.413 | 92.55 |
| Th | 8/18/2022 | 91.478 | 92.633 |
| We | 8/17/2022 | 91.888 | 92.995 |
| Tu | 8/16/2022 | 91.484 | 92.999 |
| Mo | 8/15/2022 | 91.557 | 93 |
| | | | |
| Fr | 8/12/2022 | 90.827 | 92.601 |
| Th | 8/11/2022 | 90.655 | 92.704 |
| We | 8/10/2022 | 91.305 | 93.691 |
| Tu | 8/9/2022 | 91.47 | 93.547 |

| | | | |
|---|---|---|---|
| Mo | 8/8/2022 | 91.543 | 93.611 |
| | | | |
| Fr | 8/5/2022 | 91.606 | 93.752 |
| Th | 8/4/2022 | 91.813 | 93.673 |
| We | 8/3/2022 | 91.82 | 93.715 |
| Tu | 8/2/2022 | 91.828 | 93.719 |
| Mo | 8/1/2022 | 92.873 | 94.37 |
| | | | |
| Fr | 7/29/2022 | 91.549 | 93.444 |
| Th | 7/28/2022 | 91.611 | 93.321 |
| We | 7/27/2022 | 89.979 | 91.513 |
| Tu | 7/26/2022 | 90.816 | 91.48 |
| Mo | 7/25/2022 | 90.885 | 91.469 |
| | | | |
| Fr | 7/22/2022 | 90.897 | 91.414 |
| Th | 7/21/2022 | 90.902 | 91.436 |
| We | 7/20/2022 | 90.902 | 91.452 |
| Tu | 7/19/2022 | 90.892 | 91.461 |
| Mo | 7/18/2022 | 91.012 | 91.47 |
| | | | |
| Fr | 7/15/2022 | 90.143 | 92.311 |
| Th | 7/14/2022 | 91.445 | 94.587 |
| We | 7/13/2022 | 91.527 | 94.525 |
| Tu | 7/12/2022 | 91.599 | 94.428 |
| Mo | 7/11/2022 | 91.666 | 94.428 |
| | | | |
| Fr | 7/8/2022 | 90.47 | 91.575 |
| Th | 7/7/2022 | 90.344 | 91.574 |
| We | 7/6/2022 | 90.098 | 91.555 |
| Tu | 7/5/2022 | 89.685 | 91.555 |
| | | | |
| Fr | 7/1/2022 | 89.869 | 92.478 |
| Th | 6/30/2022 | 92.084 | 95.119 |
| We | 6/29/2022 | 90.458 | 94.035 |
| Tu | 6/28/2022 | 90.501 | 93.859 |
| | | | |
| Mo | 6/27/2022 | 90.643 | 93.725 |
| Fr | 6/24/2022 | 90.651 | 93.731 |
| Th | 6/23/2022 | 90.639 | 93.676 |
| We | 6/22/2022 | 91.599 | 93.603 |
| Tu | 6/21/2022 | 93.616 | 95.322 |
| Fr | 6/17/2022 | 93.526 | 95.28 |
| Th | 6/16/2022 | 93.523 | 95.326 |
| We | 6/15/2022 | 93.472 | 95.329 |
| Tu | 6/14/2022 | 90.801 | 92.697 |
| Mo | 6/13/2022 | 92.278 | 94.185 |
| Fr | 6/10/2022 | 91.959 | 94.203 |

| | | | |
|---|---|---|---|
| Th | 6/9/2022 | 91.766 | 93.677 |
| We | 6/8/2022 | 91.724 | 93.642 |
| Tu | 6/7/2022 | 91.588 | 93.558 |
| Mo | 6/6/2022 | 90.893 | 93.67 |
| Fr | 6/3/2022 | 91.808 | 94.332 |
| Th | 6/2/2022 | 92.152 | 93.966 |
| We | 6/1/2022 | 92.191 | 93.789 |
| Tu | 5/31/2022 | 92.192 | 93.669 |
| Fr | 5/27/2022 | 92.247 | 93.815 |
| Th | 5/26/2022 | 92.263 | 93.361 |
| We | 5/25/2022 | 92.285 | 93.575 |
| Tu | 5/24/2022 | 91.897 | 93.533 |
| Mo | 5/23/2022 | 91.898 | 93.539 |
| Fr | 5/20/2022 | 91.553 | 93.363 |
| Th | 5/19/2022 | 91.548 | 93.345 |
| We | 5/18/2022 | 92.246 | 94.203 |
| Tu | 5/17/2022 | 90.649 | 92.606 |
| Mo | 5/16/2022 | 90.649 | 92.606 |
| Fr | 5/13/2022 | 89.559 | 91.515 |
| Th | 5/12/2022 | 92.017 | 93.974 |
| We | 5/11/2022 | 92.049 | 94.005 |
| Tu | 5/10/2022 | 90.273 | 92.986 |
| Mo | 5/9/2022 | 90.218 | 92.875 |
| Fr | 5/6/2022 | 90.192 | 92.814 |
| Th | 5/5/2022 | 90.169 | 93.008 |
| We | 5/4/2022 | 90.147 | 92.818 |
| Tu | 5/3/2022 | 90.927 | 92.676 |
| Mo | 5/2/2022 | 90.19 | 92.411 |
| Fr | 4/29/2022 | 90.845 | 93.557 |
| Th | 4/28/2022 | 90.866 | 93.505 |
| We | 4/27/2022 | 91.599 | 93.373 |
| Tu | 4/26/2022 | 92.044 | 93.497 |
| Mo | 4/25/2022 | 92.297 | 93.684 |
| Fr | 4/22/2022 | 92.27 | 93.596 |
| Th | 4/21/2022 | 92.347 | 93.581 |
| We | 4/20/2022 | 92.128 | 93.564 |
| Tu | 4/19/2022 | 92.061 | 93.558 |
| Mo | 4/18/2022 | 92.058 | 93.561 |
| Th | 4/14/2022 | 93.031 | 94.514 |
| We | 4/13/2022 | 93.034 | 94.517 |
| Tu | 4/12/2022 | 93.034 | 94.517 |
| Mo | 4/11/2022 | 93.034 | 94.517 |
| Fr | 4/8/2022 | 93.034 | 94.517 |
| Th | 4/7/2022 | 93.034 | 94.517 |
| We | 4/6/2022 | 92.409 | 93.813 |
| Tu | 4/5/2022 | 92.352 | 93.828 |
| Mo | 4/4/2022 | 92.301 | 93.843 |

| | | | |
|---|---|---|---|
| Fr | 4/1/2022 | 92.278 | 93.851 |
| Th | 3/31/2022 | 92.251 | 93.861 |
| We | 3/30/2022 | 92.199 | 93.765 |
| Tu | 3/29/2022 | 92.083 | 93.598 |
| Mo | 3/28/2022 | 92.043 | 93.605 |
| Fr | 3/25/2022 | 92.001 | 93.575 |
| Th | 3/24/2022 | 91.947 | 93.583 |
| We | 3/23/2022 | 91.952 | 93.499 |
| Tu | 3/22/2022 | 91.822 | 93.317 |
| Mo | 3/21/2022 | 91.872 | 93.293 |
| Fr | 3/18/2022 | 91.905 | 93.325 |
| Th | 3/17/2022 | 91.928 | 93.3 |
| We | 3/16/2022 | 92.103 | 93.895 |
| Tu | 3/15/2022 | 92.34 | 93.891 |
| Mo | 3/14/2022 | 92.642 | 94.611 |
| Fr | 3/11/2022 | 92.593 | 94.585 |
| Th | 3/10/2022 | 92.735 | 94.616 |
| We | 3/9/2022 | 92.681 | 94.609 |
| Tu | 3/8/2022 | 92.651 | 94.613 |
| Mo | 3/7/2022 | 92.73 | 94.611 |
| Fr | 3/4/2022 | 92.684 | 94.611 |
| Th | 3/3/2022 | 92.635 | 94.611 |
| We | 3/2/2022 | 92.024 | 93.796 |
| Tu | 3/1/2022 | 91.807 | 93.863 |
| Mo | 2/28/2022 | 91.444 | 93.32 |
| Fr | 2/25/2022 | 91.6 | 92.67 |
| Th | 2/24/2022 | 91.603 | 92.679 |
| We | 2/23/2022 | 91.639 | 92.67 |
| Tu | 2/22/2022 | 91.228 | 93.25 |
| Fr | 2/18/2022 | 91.276 | 92.623 |
| Th | 2/17/2022 | 91.251 | 93.35 |
| We | 2/16/2022 | 91.224 | 92.667 |
| Tu | 2/15/2022 | 90.953 | 92.5 |
| Mo | 2/14/2022 | 91.167 | 93.378 |
| Fr | 2/11/2022 | 91.696 | 93.111 |
| Th | 2/10/2022 | 91.722 | 93.108 |
| We | 2/9/2022 | 92.003 | 93.423 |
| Tu | 2/8/2022 | 92 | 93.498 |
| Mo | 2/7/2022 | 92.001 | 93.741 |
| Fr | 2/4/2022 | 92.001 | 93.7 |
| Th | 2/3/2022 | 92.001 | 93.39 |
| We | 2/2/2022 | 92.001 | 93.178 |
| Tu | 2/1/2022 | 92 | 93.179 |
| Mo | 1/31/2022 | 92 | 93.177 |
| Fr | 1/28/2022 | 91.398 | 92.877 |
| Th | 1/27/2022 | 92 | 93.234 |
| We | 1/26/2022 | 92 | 93.122 |

| | | | |
|---|---|---|---|
| Tu | 1/25/2022 | 92 | 93.409 |
| Mo | 1/24/2022 | 92 | 93.524 |
| Fr | 1/21/2022 | 92.176 | 93.674 |
| Th | 1/20/2022 | 92.191 | 93.68 |
| We | 1/19/2022 | 92.252 | 93.617 |
| Tu | 1/18/2022 | 92.251 | 93.617 |
| Fr | 1/14/2022 | 92.216 | 93.611 |
| Th | 1/13/2022 | 92.223 | 93.623 |
| We | 1/12/2022 | 91.975 | 93.617 |
| Tu | 1/11/2022 | 91.152 | 92.493 |
| Mo | 1/10/2022 | 92.688 | 93.242 |
| Fr | 1/7/2022 | 92.736 | 93.255 |
| Th | 1/6/2022 | 92.711 | 93.255 |
| We | 1/5/2022 | 90.685 | 92.54 |
| Tu | 1/4/2022 | 90.34 | 92.37 |
| Mo | 1/3/2022 | 90.318 | 92.373 |
| Fr | 12/31/2021 | 90.749 | 92.823 |
| Th | 12/30/2021 | 90.757 | 92.933 |
| We | 12/29/2021 | 89.625 | 92.239 |
| Tu | 12/28/2021 | 89.684 | 92.21 |
| Mo | 12/27/2021 | 90.414 | 92.466 |
| Th | 12/23/2021 | 90.292 | 92.449 |
| We | 12/22/2021 | 89.583 | 92 |
| Tu | 12/21/2021 | 89.639 | 92 |
| Mo | 12/20/2021 | 90.253 | 92.046 |
| Fr | 12/17/2021 | 90.461 | 92.265 |
| Th | 12/16/2021 | 91.273 | 92.35 |
| We | 12/15/2021 | 91.222 | 92.301 |
| Tu | 12/14/2021 | 91.323 | 92.283 |
| Mo | 12/13/2021 | 91.373 | 92.25 |
| Fr | 12/10/2021 | 91.492 | 91.992 |
| Th | 12/9/2021 | 91.486 | 91.972 |
| We | 12/8/2021 | 91.433 | 91.92 |
| Tu | 12/7/2021 | 89.348 | 90.112 |
| Mo | 12/6/2021 | 88.831 | 90 |
| Fr | 12/3/2021 | 88.805 | 89.999 |
| Th | 12/2/2021 | 88.772 | 90 |
| We | 12/1/2021 | 88.734 | 90 |
| Tu | 11/30/2021 | 88.657 | 89.956 |
| Mo | 11/29/2021 | 89.08 | 90.416 |
| Fr | 11/26/2021 | 89.126 | 90.518 |
| We | 11/24/2021 | 89.126 | 90.518 |
| Tu | 11/23/2021 | 89.113 | 90.539 |
| Mo | 11/22/2021 | 89.118 | 90.537 |
| Fr | 11/19/2021 | 89.143 | 90.376 |
| Th | 11/18/2021 | 89.128 | 90.389 |
| We | 11/17/2021 | 89.098 | 90.389 |

| | | | |
|---|---|---|---|
| Tu | 11/16/2021 | 89.067 | 90.39 |
| Mo | 11/15/2021 | 89.115 | 90.539 |
| Fr | 11/12/2021 | 89.463 | 90.434 |
| We | 11/10/2021 | 89.181 | 90.166 |
| Tu | 11/9/2021 | 89.16 | 90.169 |
| Mo | 11/8/2021 | 89.146 | 90.164 |
| Fr | 11/5/2021 | 89.471 | 90.077 |
| Th | 11/4/2021 | 89.49 | 90.033 |
| We | 11/3/2021 | 89.492 | 90.025 |
| Tu | 11/2/2021 | 89.493 | 90.02 |
| Mo | 11/1/2021 | 89.493 | 90.011 |
| Fr | 10/29/2021 | 78.344 | 80.345 |
| Th | 10/28/2021 | 78.385 | 80.727 |
| We | 10/27/2021 | 78.434 | 80.374 |
| Tu | 10/26/2021 | 78.487 | 80.515 |
| Mo | 10/25/2021 | 77.935 | 79.272 |
| Fr | 10/22/2021 | 77.923 | 79.296 |
| Th | 10/21/2021 | 77.585 | 78.997 |
| We | 10/20/2021 | 77.771 | 79.226 |
| Tu | 10/19/2021 | 77.771 | 79.274 |
| Mo | 10/18/2021 | 77.916 | 79.47 |
| Fr | 10/15/2021 | 77.342 | 78.953 |
| Th | 10/14/2021 | 77.213 | 78.886 |
| We | 10/13/2021 | 77.317 | 79.058 |
| Tu | 10/12/2021 | 77.161 | 78.977 |
| Fr | 10/8/2021 | 77.453 | 79.35 |
| Th | 10/7/2021 | 77.275 | 79.262 |
| We | 10/6/2021 | 77.039 | 79.125 |
| Tu | 10/5/2021 | 76.858 | 79.051 |
| Mo | 10/4/2021 | 76.244 | 78.678 |
| Fr | 10/1/2021 | 76.341 | 78.518 |
| Th | 9/30/2021 | 76.384 | 78.55 |
| We | 9/29/2021 | 76.433 | 78.578 |
| Tu | 9/28/2021 | 76.487 | 78.545 |
| Mo | 9/27/2021 | 76.499 | 78.54 |
| Fr | 9/24/2021 | 75.969 | 78.9 |
| Th | 9/23/2021 | 75.893 | 80 |
| We | 9/22/2021 | 75.997 | 78.14 |
| Tu | 9/21/2021 | 75.606 | 77.9 |
| Mo | 9/20/2021 | 74.129 | 76.951 |
| Fr | 9/17/2021 | 74.399 | 78.755 |
| Th | 9/16/2021 | 74.651 | 77.866 |
| We | 9/15/2021 | 74.862 | 76.355 |
| Tu | 9/14/2021 | 74.988 | 76.529 |
| Mo | 9/13/2021 | 75.116 | 76.712 |
| Fr | 9/10/2021 | 74.178 | 75.835 |
| Th | 9/9/2021 | 74.049 | 75.772 |

| | | | |
|---|---|---|---|
| We | 9/8/2021 | 73.214 | 75.897 |
| Tu | 9/7/2021 | 76.284 | 77.629 |
| Fr | 9/3/2021 | 76.056 | 77.599 |
| Th | 9/2/2021 | 76.01 | 77.634 |
| We | 9/1/2021 | 75.754 | 77.453 |
| Tu | 8/31/2021 | 76 | 77.511 |
| Mo | 8/30/2021 | 72.801 | 73.995 |
| Fr | 8/27/2021 | 72.775 | 73.995 |
| Th | 8/26/2021 | 72.751 | 74 |
| We | 8/25/2021 | 73.453 | 74.732 |
| Tu | 8/24/2021 | 73.468 | 74.776 |
| Mo | 8/23/2021 | 73.499 | 74.84 |
| Fr | 8/20/2021 | 75.543 | 76.947 |
| Th | 8/19/2021 | 75.489 | 76.947 |
| We | 8/18/2021 | 75.896 | 77.04 |
| Tu | 8/17/2021 | 75.904 | 77.042 |
| Mo | 8/16/2021 | 75.495 | 77.019 |
| Fr | 8/13/2021 | 75.568 | 77.025 |
| Th | 8/12/2021 | 76.313 | 77.252 |
| We | 8/11/2021 | 76.382 | 77.227 |
| Tu | 8/10/2021 | 76.382 | 77.251 |
| Mo | 8/9/2021 | 76.147 | 77.158 |
| Fr | 8/6/2021 | 76.352 | 77.363 |
| Th | 8/5/2021 | 76.166 | 77.251 |
| We | 8/4/2021 | 76.222 | 77.253 |
| Tu | 8/3/2021 | 76.295 | 77.253 |
| Mo | 8/2/2021 | 76.334 | 77.249 |
| Fr | 7/30/2021 | 76.404 | 77.226 |
| Th | 7/29/2021 | 76.404 | 77.252 |
| We | 7/28/2021 | 76.392 | 77.251 |
| Tu | 7/27/2021 | 76.386 | 77.251 |
| Mo | 7/26/2021 | 76.322 | 77.223 |
| Fr | 7/23/2021 | 76.29 | 77.244 |
| Th | 7/22/2021 | 76.32 | 77.253 |
| We | 7/21/2021 | 76.353 | 77.251 |
| Tu | 7/20/2021 | 76.345 | 77.276 |
| Mo | 7/19/2021 | 76.464 | 77.269 |
| Fr | 7/16/2021 | 76.459 | 77.255 |
| Th | 7/15/2021 | 76.454 | 77.234 |
| We | 7/14/2021 | 76.375 | 77.525 |
| Tu | 7/13/2021 | 76.371 | 77.602 |
| Mo | 7/12/2021 | 76.385 | 77.423 |
| Fr | 7/9/2021 | 76.149 | 77.225 |
| Th | 7/8/2021 | 76.15 | 77.197 |
| We | 7/7/2021 | 76.15 | 77.068 |
| Tu | 7/6/2021 | 76.147 | 77.161 |
| Fr | 7/2/2021 | 76.189 | 76.89 |

| | | | |
|---|---|---|---|
| Th | 7/1/2021 | 76.161 | 76.773 |
| We | 6/30/2021 | 76.18 | 76.758 |
| Tu | 6/29/2021 | 76.194 | 76.739 |
| Mo | 6/28/2021 | 76.216 | 76.715 |
| Fr | 6/25/2021 | 76.222 | 76.716 |
| Th | 6/24/2021 | 76.206 | 76.714 |
| We | 6/23/2021 | 76.002 | 76.498 |
| Tu | 6/22/2021 | 76.003 | 76.499 |
| Mo | 6/21/2021 | 76.003 | 76.498 |
| Fr | 6/18/2021 | 75.437 | 76.045 |
| Th | 6/17/2021 | 75.435 | 75.989 |
| We | 6/16/2021 | 75.433 | 75.95 |
| Tu | 6/15/2021 | 75.432 | 75.926 |
| Mo | 6/14/2021 | 75.431 | 75.925 |
| Fr | 6/11/2021 | 75.432 | 75.927 |
| Th | 6/10/2021 | 75.433 | 75.928 |
| We | 6/9/2021 | 75.328 | 76.398 |
| Tu | 6/8/2021 | 75.265 | 76.223 |
| Mo | 6/7/2021 | 75.22 | 76.04 |
| Fr | 6/4/2021 | 75.218 | 75.968 |
| Th | 6/3/2021 | 75.208 | 75.745 |
| We | 6/2/2021 | 75.198 | 75.702 |
| Tu | 6/1/2021 | 75.195 | 75.701 |
| Fr | 5/28/2021 | 75.019 | 75.5 |
| Th | 5/27/2021 | 75.063 | 76.947 |
| We | 5/26/2021 | 75.653 | 77.78 |
| Tu | 5/25/2021 | 75.701 | 77.84 |
| Mo | 5/24/2021 | 75.639 | 77.771 |
| Fr | 5/21/2021 | 73.935 | 75.815 |
| Th | 5/20/2021 | 75.394 | 77.575 |
| We | 5/19/2021 | 78.309 | 79.325 |
| Tu | 5/18/2021 | 78.258 | 79.282 |
| Mo | 5/17/2021 | 80 | 81.04 |
| Fr | 5/14/2021 | 80 | 81.067 |
| Th | 5/13/2021 | 80 | 81.106 |
| We | 5/12/2021 | 80.168 | 81.316 |
| Tu | 5/11/2021 | 80 | 81.163 |
| Mo | 5/10/2021 | 80 | 81.181 |
| Fr | 5/7/2021 | 80 | 81.201 |
| Th | 5/6/2021 | 80 | 81.223 |
| We | 5/5/2021 | 80 | 81.246 |
| Tu | 5/4/2021 | 79.776 | 81.048 |
| Mo | 5/3/2021 | 79.8 | 81.101 |
| Fr | 4/30/2021 | 79.748 | 81.083 |
| Th | 4/29/2021 | 79.55 | 80.919 |
| We | 4/28/2021 | 79.586 | 80.993 |
| Tu | 4/27/2021 | 79.739 | 81.116 |

| | | | |
|---|---|---|---|
| Mo | 4/26/2021 | 79.121 | 80.952 |
| Fr | 4/23/2021 | 74.493 | 75.494 |
| Th | 4/22/2021 | 74.427 | 75.428 |
| We | 4/21/2021 | 74.054 | 75.057 |
| Tu | 4/20/2021 | 73.417 | 74.426 |
| Mo | 4/19/2021 | 73.529 | 74.552 |
| Fr | 4/16/2021 | 72.661 | 73.722 |
| Th | 4/15/2021 | 73.014 | 74.173 |
| We | 4/14/2021 | 73.187 | 74.604 |
| Tu | 4/13/2021 | 73.42 | 75.199 |
| Mo | 4/12/2021 | 73.291 | 75.329 |
| Fr | 4/9/2021 | 73.404 | 75.571 |
| Th | 4/8/2021 | 73.309 | 75.513 |
| We | 4/7/2021 | 73.778 | 74.763 |
| Tu | 4/6/2021 | 73.636 | 74.62 |
| Mo | 4/5/2021 | 73.47 | 74.464 |
| Th | 4/1/2021 | 71.385 | 72.385 |
| We | 3/31/2021 | 73.249 | 74.249 |
| Tu | 3/30/2021 | 73.086 | 74.087 |
| Mo | 3/29/2021 | 72.976 | 73.978 |
| Fr | 3/26/2021 | 71.827 | 72.833 |
| Th | 3/25/2021 | 71.558 | 72.57 |
| We | 3/24/2021 | 71.48 | 72.497 |
| Tu | 3/23/2021 | 71.085 | 72.105 |
| Mo | 3/22/2021 | 70.888 | 71.911 |
| Fr | 3/19/2021 | 70.653 | 71.68 |
| Th | 3/18/2021 | 70.834 | 71.865 |
| We | 3/17/2021 | 71.04 | 72.077 |
| Tu | 3/16/2021 | 71.261 | 72.302 |
| Mo | 3/15/2021 | 71.513 | 72.561 |
| Fr | 3/12/2021 | 71.487 | 72.537 |
| Th | 3/11/2021 | 71.596 | 72.653 |
| We | 3/10/2021 | 72.113 | 73.179 |
| Tu | 3/9/2021 | 71.96 | 73.035 |
| Mo | 3/8/2021 | 72.05 | 73.136 |
| Fr | 3/5/2021 | 71.712 | 72.804 |
| Th | 3/4/2021 | 71.624 | 72.72 |
| We | 3/3/2021 | 71.645 | 72.745 |
| Tu | 3/2/2021 | 71.621 | 72.727 |
| Mo | 3/1/2021 | 71.431 | 72.542 |
| Fr | 2/26/2021 | 70.991 | 72.114 |
| Th | 2/25/2021 | 70.958 | 72.091 |
| We | 2/24/2021 | 70.789 | 71.932 |
| Tu | 2/23/2021 | 70.695 | 71.842 |
| Mo | 2/22/2021 | 70.487 | 71.644 |
| Fr | 2/19/2021 | 70.11 | 71.299 |
| Th | 2/18/2021 | 70.011 | 71.273 |

| | | | |
|---|---|---|---|
| We | 2/17/2021 | 70.208 | 71.639 |
| Tu | 2/16/2021 | 70.223 | 71.859 |
| Fr | 2/12/2021 | 69.9 | 71.804 |
| Th | 2/11/2021 | 69.939 | 71.743 |
| We | 2/10/2021 | 69.939 | 71.743 |
| Tu | 2/9/2021 | 69.933 | 71.739 |
| Mo | 2/8/2021 | 69.782 | 69.916 |
| Fr | 2/5/2021 | 69.782 | 69.916 |
| Th | 2/4/2021 | 69.782 | 69.916 |
| We | 2/3/2021 | 69.782 | 69.916 |
| Tu | 2/2/2021 | 70.207 | 71.914 |
| Mo | 2/1/2021 | 69.275 | 71.212 |
| Fr | 1/29/2021 | 69.415 | 71.334 |
| Th | 1/28/2021 | 69.527 | 71.441 |
| We | 1/27/2021 | 69.581 | 71.496 |
| Tu | 1/26/2021 | 69.63 | 71.547 |
| Mo | 1/25/2021 | 69.676 | 71.596 |
| Fr | 1/22/2021 | 69.159 | 70.33 |
| Th | 1/21/2021 | 69.163 | 70.338 |
| We | 1/20/2021 | 69.147 | 70.321 |
| Tu | 1/19/2021 | 69.151 | 70.329 |
| Fr | 1/15/2021 | 69.186 | 70.37 |
| Th | 1/14/2021 | 69.191 | 70.374 |
| We | 1/13/2021 | 69.165 | 70.35 |
| Tu | 1/12/2021 | 69.169 | 70.359 |
| Mo | 1/11/2021 | 69.174 | 70.367 |
| Fr | 1/8/2021 | 69.214 | 70.41 |
| Th | 1/7/2021 | 69.216 | 70.414 |
| We | 1/6/2021 | 69.198 | 70.402 |
| Tu | 1/5/2021 | 69.199 | 70.41 |
| Mo | 1/4/2021 | 69.2 | 70.417 |
| Th | 12/31/2020 | 69.23 | 70.453 |
| We | 12/30/2020 | 69.23 | 70.455 |
| Tu | 12/29/2020 | 69.211 | 70.445 |
| Mo | 12/28/2020 | 69.212 | 70.466 |
| Th | 12/24/2020 | 69.239 | 70.564 |
| We | 12/23/2020 | 69.236 | 70.729 |
| Tu | 12/22/2020 | 69.202 | 70.906 |
| Mo | 12/21/2020 | 69.199 | 71.019 |
| Fr | 12/18/2020 | 69.307 | 71.239 |
| Th | 12/17/2020 | 69.423 | 71.342 |
| We | 12/16/2020 | 69.473 | 71.389 |
| Tu | 12/15/2020 | 69.527 | 71.442 |
| Mo | 12/14/2020 | 69.577 | 71.492 |
| Fr | 12/11/2020 | 69.577 | 71.492 |
| Th | 12/10/2020 | 69.423 | 71.342 |
| We | 12/9/2020 | 69.477 | 71.392 |

| | | | |
|---|---|---|---|
| Tu | 12/8/2020 | 69.527 | 71.442 |
| Mo | 12/7/2020 | 69.581 | 71.496 |
| Fr | 12/4/2020 | 69.477 | 71.392 |
| Th | 12/3/2020 | 69.531 | 71.446 |
| We | 12/2/2020 | 69.581 | 71.496 |
| Tu | 12/1/2020 | 67.96 | 69.168 |
| Mo | 11/30/2020 | 67.964 | 69.2 |
| Fr | 11/27/2020 | 67.996 | 69.307 |
| We | 11/25/2020 | 68.009 | 69.536 |
| Tu | 11/24/2020 | 67.993 | 70.076 |
| Mo | 11/23/2020 | 67.986 | 71.351 |
| Fr | 11/20/2020 | 68.004 | 72.983 |
| Th | 11/19/2020 | 68 | 74.733 |
| We | 11/18/2020 | 68 | 74.569 |
| Tu | 11/17/2020 | 68 | 74.39 |
| Mo | 11/16/2020 | 68 | 74.293 |
| Fr | 11/13/2020 | 68 | 74.191 |
| Th | 11/12/2020 | 68 | 74.092 |
| Tu | 11/10/2020 | 70.559 | 71.719 |
| Mo | 11/9/2020 | 70.58 | 71.717 |
| Fr | 11/6/2020 | 70.658 | 71.771 |
| Th | 11/5/2020 | 70.68 | 71.76 |
| We | 11/4/2020 | 70.686 | 71.802 |
| Tu | 11/3/2020 | 70.708 | 71.852 |
| Mo | 11/2/2020 | 70.731 | 71.875 |
| Fr | 10/30/2020 | 70.823 | 71.963 |
| Th | 10/29/2020 | 70.846 | 71.985 |
| We | 10/28/2020 | 70.861 | 71.999 |
| Tu | 10/27/2020 | 70.885 | 72.028 |
| Mo | 10/26/2020 | 70.909 | 72.058 |
| Fr | 10/23/2020 | 71.003 | 72.159 |
| Th | 10/22/2020 | 71.027 | 72.192 |
| We | 10/21/2020 | 71.036 | 72.211 |
| Tu | 10/20/2020 | 71.061 | 72.243 |
| Mo | 10/19/2020 | 71.086 | 72.274 |
| Fr | 10/16/2020 | 71.181 | 72.377 |
| Th | 10/15/2020 | 71.207 | 72.411 |
| We | 10/14/2020 | 71.218 | 72.427 |
| Tu | 10/13/2020 | 71.244 | 72.455 |
| Fr | 10/9/2020 | 71.378 | 72.596 |
| Th | 10/8/2020 | 71.405 | 72.626 |
| We | 10/7/2020 | 71.41 | 72.633 |
| Tu | 10/6/2020 | 71.438 | 72.658 |
| Mo | 10/5/2020 | 71.465 | 72.69 |
| Fr | 10/2/2020 | 71.569 | 72.8 |
| Th | 10/1/2020 | 71.597 | 72.835 |
| We | 9/30/2020 | 71.61 | 72.852 |

| | | | |
|---|---|---|---|
| Tu | 9/29/2020 | 71.639 | 72.884 |
| Mo | 9/28/2020 | 71.667 | 72.911 |
| Fr | 9/25/2020 | 71.773 | 73.015 |
| Th | 9/24/2020 | 71.802 | 73.04 |
| We | 9/23/2020 | 71.817 | 73.054 |
| Tu | 9/22/2020 | 71.846 | 73.079 |
| Mo | 9/21/2020 | 71.875 | 73.108 |
| Fr | 9/18/2020 | 71.983 | 73.22 |
| Th | 9/17/2020 | 72.012 | 73.253 |
| We | 9/16/2020 | 72.028 | 73.271 |
| Tu | 9/15/2020 | 72.058 | 73.305 |
| Mo | 9/14/2020 | 72.087 | 73.336 |
| Fr | 9/11/2020 | 72.195 | 73.442 |
| Th | 9/10/2020 | 72.222 | 73.466 |
| We | 9/9/2020 | 72.23 | 73.474 |
| Tu | 9/8/2020 | 72.257 | 73.501 |
| Fr | 9/4/2020 | 72.401 | 73.649 |
| Th | 9/3/2020 | 72.431 | 73.682 |
| We | 9/2/2020 | 72.433 | 73.684 |
| Tu | 9/1/2020 | 72.464 | 73.713 |
| Mo | 8/31/2020 | 72.494 | 73.737 |
| Fr | 8/28/2020 | 72.603 | 73.84 |
| Th | 8/27/2020 | 72.642 | 73.88 |
| We | 8/26/2020 | 72.652 | 73.891 |
| Tu | 8/25/2020 | 72.68 | 73.92 |
| Mo | 8/24/2020 | 72.708 | 73.951 |
| Fr | 8/21/2020 | 72.809 | 74.056 |
| Th | 8/20/2020 | 72.835 | 74.09 |
| We | 8/19/2020 | 73 | 75 |
| Tu | 8/18/2020 | 73 | 75 |
| Mo | 8/17/2020 | 73 | 75 |
| Fr | 8/14/2020 | 73 | 75 |
| Th | 8/13/2020 | 73 | 75 |
| We | 8/12/2020 | 73 | 75 |
| Tu | 8/11/2020 | 73 | 75 |
| Mo | 8/10/2020 | 73 | 75 |
| Fr | 8/7/2020 | 73 | 75 |
| Th | 8/6/2020 | 73 | 75 |
| We | 8/5/2020 | 73 | 75 |
| Tu | 8/4/2020 | 73 | 75 |
| Mo | 8/3/2020 | 73 | 75 |
| Fr | 7/31/2020 | 73 | 75 |
| Th | 7/30/2020 | 73 | 75 |
| We | 7/29/2020 | 73.134 | 74.974 |
| Tu | 7/28/2020 | 73.245 | 74.951 |
| Mo | 7/27/2020 | 73.38 | 74.986 |
| Fr | 7/24/2020 | 73.547 | 74.935 |

| | | | |
|---|---|---|---|
| Th | 7/23/2020 | 74.045 | 74.97 |
| We | 7/22/2020 | 74.372 | 74.527 |
| Tu | 7/21/2020 | 73.5 | 73.624 |
| Mo | 7/20/2020 | 73.085 | 76.281 |
| Fr | 7/17/2020 | 73.078 | 76.281 |
| Th | 7/16/2020 | 73.389 | 75.567 |
| We | 7/15/2020 | 74 | 76.116 |
| Tu | 7/14/2020 | 74 | 76.115 |
| Mo | 7/13/2020 | 74 | 76.115 |
| Fr | 7/10/2020 | 74 | 76 |
| Th | 7/9/2020 | 74 | 76 |
| We | 7/8/2020 | 74 | 76 |
| Tu | 7/7/2020 | 75.73 | 75.967 |
| Mo | 7/6/2020 | 75.73 | 75.942 |
| Th | 7/2/2020 | 74.904 | 75.971 |
| We | 7/1/2020 | 74.924 | 75.987 |
| Tu | 6/30/2020 | 75.737 | 76.051 |
| Mo | 6/29/2020 | 75.727 | 76.03 |
| Fr | 6/26/2020 | 75.575 | 75.699 |
| Th | 6/25/2020 | 76.68 | 76.905 |
| We | 6/24/2020 | 78.317 | 79.763 |
| Tu | 6/23/2020 | 78.417 | 79.671 |
| Mo | 6/22/2020 | 78.434 | 79.597 |
| Fr | 6/19/2020 | 78.876 | 79.002 |
| Th | 6/18/2020 | 65.609 | 66.122 |
| We | 6/17/2020 | 65.797 | 65.946 |
| Tu | 6/16/2020 | 60.045 | 60.181 |
| Mo | 6/15/2020 | 59.342 | 59.804 |
| Fr | 6/12/2020 | 59.876 | 60.002 |